IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NATIONS FUND I, LLC, a Delaware limited liability company, | Case No. 6:20-cv-00498-AA<br>**OPINION AND ORDER** |
| Plaintiff, | |
| vs. | |
| WESTWARD MANAGEMENT COMPANY, LLC, a Washington limited liability company; et al., | |
| Defendants. | |

AIKEN, District Judge:

This action arises from plaintiff Nations Fund I, LLC's sale/leaseback transaction with a third party, Axis Crane LLC ("Axis"). Plaintiff alleges that, during the solicitation and negotiation process and in the sale/leaseback documents themselves, defendants made representations that caused plaintiff to buy a crane package from Axis for about $1.2 million more than it was worth. Defendants now

Page 1 – OPINION AND ORDER

move to dismiss plaintiff's claims for failure to state a claim. Doc. 21.[1] For the following reasons, defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the Complaint (doc. 1). Plaintiff is specialty commercial finance company incorporated and based in Delaware. Defendants are three Washington companies, Westward Management Company, LLC; Westward Management Company II, LLC; and Westward Partners, LLC ("Westward entities"); and three individuals based in Washington and Oregon, Alexander Clark, Travis Wilt, and Robert Andrew Baldridge. Axis, a third party, was a full-service rental company incorporated and based in Oregon. Wilt was the President of Axis and on its board of directors, Clark was the Vice President of Axis, and Baldrige is the founder and managing director of the Westward entities and was also on Axis' board.

This action arises from plaintiff's sale/leaseback transaction with Axis, which involved a crane unit that Axis had been leasing from another third party, Bigge Crane and Rigging Company ("Bigge"). In the transaction, Axis would exercise its option to purchase the crane unit from Bigge and, in turn, sell the crane unit to plaintiff. Plaintiff would then buy the crane unit from Axis for its fair market value and lease it back to Axis.

---

[1] The Motion to Dismiss (doc. 21) was initially filed by defendants Westward Management Company, LLC; Westward Management Company II, LLC; Westward Partners, LLC; Travis Wilt; and Andrew Baldridge. Later, defendant Alexander Clark filed a Notice of Joinder (doc. 32) in the motion and its supporting declarations.

When the sale/leaseback transaction closed in June 2018, plaintiff paid Axis $1.2 million for its equity in the crane unit and paid Bigge $1.5 million for the remaining debt on the crane unit. *Id.* ¶ 6. At the time, plaintiff believed that it was purchasing a 2006 Liebherr crane with accessories that included a wide frame and narrow track system (collectively "entire crane package"). But after Axis filed for bankruptcy and plaintiff obtained relief from the Bankruptcy Court's automatic stay to allow plaintiff to recover the crane, plaintiff learned that just before the sale between Axis and Bigge, "one or more of Defendants" told Bigge that Axis would not be purchasing the wide frame and narrow track system and, ultimately, Axis purchased only the 2006 Liebherr crane. *Id.* ¶ 74.

Plaintiff then filed this action, asserting claims for fraud, fraudulent inducement, and alter ego. Plaintiff alleges that defendants made representations during the solicitation and negotiation process and in the sale/leaseback documents themselves which led plaintiff to believe that it was purchasing the entire crane package and, ultimately, to buy the 2006 Liebherr crane for a price that was $1,200,000 above fair market value. *Id.* ¶ 75. In response, defendants filed this motion under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all three claims for failure to state a claim.

## STANDARDS

When considering a motion to dismiss, courts construe complaints in favor of the plaintiff and takes all factual allegations as true. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007). "[F]or a complaint to survive a motion to dismiss, the

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" are not sufficient to state a plausible claim. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

## DISCUSSION

Plaintiff asserts three claims: (1) fraud, (2) fraudulent inducement, and (3) alter ego. Defendants assert that all three should be dismissed because plaintiff failed to allege applicable governing law. They also assert that the fraud claim should be dismissed as either duplicative of the fraudulent inducement claim or as a disguised breach of contract claim. Finally, defendants assert that plaintiff's alter ego claim should be dismissed because it is not a stand-alone cause of action and plaintiff has not alleged sufficient facts to state an alter ego theory of liability.

### I. *Applicable Law*

Defendants argue that all three claims are "facially defective because they are generic causes of action and do not identify the applicable common or statutory law

governing the claim." Mot. to Dismiss (doc. 21) at 2. Defendants assert that the Complaints failure to do so provides insufficient notice under Federal Rule of Civil Procedure 8. Reply (doc. 34) at 3. But a straightforward application of Oregon's choice of law rules demonstrates that Oregon law applies to plaintiff's common law tort claims at this stage.

"Federal courts sitting in diversity look to the law of the forum state . . . when making choice of law determinations." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Under Oregon's choice of law rules, courts apply Oregon law unless the party seeking to apply a different state's law identifies a material difference between Oregon law and the law of the other state. *Great Am. All. Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*, 416 F. Supp. 3d 1098, 1102 (D. Or. 2019). Both parties agree that Oregon law applies to plaintiff's tort claims for purposes of this motion to dismiss. Although defendants' motion suggests that they may seek to apply another state's law at a later stage, defendants do not explain why that presents a notice issue at the pleading stage. The Court concludes that any future choice of law dispute could be resolved by applying Oregon's choice of law rules. Defendants are, therefore, not entitled to dismissal on this ground.

## II.    *Fraud Claim*

Next, defendants argue that plaintiff's fraud claim should be dismissed because it is duplicative of plaintiff's fraudulent inducement claim. Under Oregon law, a plaintiff must prove the following elements to prevail on a claim of fraud:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it

> should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Or. Pub. Emps.' Ret. Bd. ex rel. Or. Pub. Emps.' Ret. Fund. v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 424 (2004) (citation and quotation marks omitted). Fraudulent inducement is a specific subset of fraud that requires a plaintiff to show "that he was (1) induced to enter into a contract by an (2) intentional [and material] (3) misrepresentation." *EnSoftek, Inc. v. Sw. Behavioral & Health Servs., Inc.*, No. 3:19-cv-000615-MO, 2020 WL 390891, at *2 (D. Or. Jan. 23, 2020).

In the Complaint, plaintiff alleges that Wilt, Clark and Baldridge made affirmative misrepresentations during the solicitation, negotiation, and underwriting for the sale/leaseback transaction and that Wilt and Baldridge made affirmative misrepresentations in the sale/leaseback documents themselves, which they executed. In its fraud claim, plaintiff alleges that defendants made these misrepresentations with the intent that plaintiff rely, and plaintiff did rely, on them to buy the 2006 Liebherr Crane. Compl. ¶¶ 78–79, 84, 86. In its fraudulent inducement claim, plaintiff alleges that defendants made these misrepresentations with the intent that plaintiff rely, and plaintiff did rely, on them to enter into the sale/leaseback contract. *Id.* ¶¶ 89–90, 94–95. As pleaded, the claims are based on distinct theories of defendants' intent and plaintiff's reliance. And, though they may ultimately be shown to be duplicative, they are not sufficiently overlapping as pleaded to warrant dismissal under the Rule 12(b)(6) standards.

Defendants also argue that the Court should dismiss the fraud claim as a disguised breach of contract claim because defendants were not parties to the sale/leaseback agreement and plaintiff has not alleged facts sufficient to establish a plausible case for piercing the corporate veil or treating defendants as Axis' alter ego. To state a claim for breach of contract under Oregon law, a plaintiff must allege the existence of a contract, the relevant terms of the contract, the plaintiff's full performance and lack of breach, and the defendant's breach resulting in damage to the plaintiff. *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996).[2] The elements of fraud, outlined above, are therefore distinct from those of breach of contract. Most notably, fraud requires a showing related to the defendant's state of mind—and intentional or reckless misrepresentation—while breach of contract does not.

Defendants' reliance on New York and Pennsylvania law is unpersuasive. First, defendants cite *Garret v. Music Publishing Company of America, LLC*, 740 F. Supp. 2d 457 (S.D.N.Y. 2010). In *Garret*, the Southern District of New York observed:

> As a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract. Thus, general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim.

---

[2] Defendants assert that New York law applies to any contract claims, but "there is no material different between the elements of a breach of contract claim in Oregon and New York." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152, 1158 (D. Or. 2015). To state a claim for breach of contract under New York law, a plaintiff must allege "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages." *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 839 N.Y.S. 2d 237, 239 (2010).

*Id.* at 464 – 65 (citations omitted and alterations normalized). But, here, the fraud claim is not based on general allegations that defendants entered into a contract with the intent not to perform it. It is based on allegations that defendants made affirmative misrepresentations to plaintiff before plaintiff entered into the sale/leaseback contract and in the contract itself. In *Amsan, LLC v. Prophet 21, Inc.*, the Eastern District of Pennsylvania considered whether the plaintiff's fraud and fraudulent inducement claims should be dismissed under Pennsylvania's "gist of the action" test, which applies "[w]hen a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement." 2020 WL 1231819, at *3 (E.D.P.A. Oct. 15, 2001). Even assuming that test could apply to Oregon tort claims, plaintiff alleges that defendants committed fraud by making statements that they knew were false before the contract was carried out by Axis.

### III.  *Alter Ego*

Finally, defendants move to dismiss plaintiff's alter ego claim. "[A]lter ego is not a stand-alone claim, but is a means of obtaining relief for the wrongful conduct of a corporate entity from parties otherwise shielded by the corporate veil." *Towne v. Robbins*, No. CV02-1688-MO, 2005 WL 139077, at *5 (D. Or. Jan. 20, 2005); *see also In re. Capriati Constr. Corp., Inc.*, 2018 WL 1404439, at *7 (9th Cir. B.A.P. Mar. 20, 2018) ("[T]he general rule in most (if not all) states is that 'alter ego' is not an independent cause of action, but is an equitable remedy—a legal theory or doctrine used to impose liability against the alter ego defendant under another cause of action."). Plaintiff's third claim for relief is, therefore, dismissed to the extent that it

seeks to assert an independent "alter ego" claim.  The Court concludes, however, that the Complaint adequately alleges an alter ego theory of liability at the pleading stage and that, whether the Westward defendants should be held liable as Axis' alter ego is better suited for resolution at a later stage and after further factual development.

## CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss (doc. 21) is GRANTED with respect to plaintiff's alter ego claim, to the extent that it seeks to assert an independent alter ego cause of action, and otherwise DENIED.

IT IS SO ORDERED.

Dated this <u>30th</u> day of September 2021.

<u>      /s/Ann Aiken      </u>

Ann Aiken
United States District Judge